UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

JANNIL CHRISTON-SCORPIO SHEPPARD,

    *Plaintiff*,

 -against-

       **MEMORANDUM AND ORDER**

       21-CV-2075(KAM)(TAM)

LT. LEUZE; P.O. SOSE; P.O. CARLISLE;
P.O. GLORIMAR DURAN,

    *Defendants*.

--------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

    Plaintiff Jannil Christon-Scorpio Sheppard, proceeding *pro se*, brings this action against four New York City police officers pursuant to 42 U.S.C. §§ 1981 and 1983. (ECF No. 2 ("Compl.") at 2.) Defendants move to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 29.) For the reasons set forth below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## Background

    On a motion to dismiss, the court accepts the truth of all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021). The court may also consider documents incorporated by reference into the complaint and matters of proper judicial notice and public record. *Id.* at

996.  Moreover, "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

## I.  Factual Background

392 Adelphi Street is a three-family townhouse in Brooklyn, New York.  (Compl. at 5, 20, 22.)[1]  Plaintiff alleges that, as a family home passed on through his grandmother, he had been welcome at 392 Adelphi Street "for the entire 34 years of my life."  (*Id.* at 8; ECF No. 27 ("Pl.'s Opp'n") at 9.)  Numerous family members lived at 392 Adelphi Street over the course of more than four decades, including Plaintiff and his grandmother, father, and aunt.  (Pl.'s Opp'n at 8-9.)  For two years prior to the events at issue in this case, Plaintiff lived in a first-floor apartment at 392 Adelphi Street with his father.  (Compl. at 8; Pl.'s Opp'n at 6.)  Plaintiff had a key to the apartment, received mail and stored his belongings there, and had a driver's license listing 392 Adelphi Street as his address.  (Compl. at 6, 8, 11; Pl.'s Opp'n at 10, 20.)

On March 7, 2020, Plaintiff voluntarily admitted himself to an alcohol treatment center.  (Compl. at 5.)  When he was released on March 21, 2020, Plaintiff attempted to return to the

---

[1] All pin citations refer to the page number assigned by the court's CM/ECF system.

apartment that he allegedly shared with his father at 392 Adelphi Street. (*Id.*) Upon arrival, Plaintiff was informed by his uncle, Barry Sheppard, that his father had been hospitalized with COVID-19 and that the house required cleaning and sanitization. (*Id.*) As a result, Plaintiff temporarily stayed with another relative. (*Id.*)

On April 14, 2020, Plaintiff's father passed away. (*Id.*) On April 19, 2020, Plaintiff returned to 392 Adelphi St. but discovered that the house had been "ransacked" and "many items [had been] cleared away and put in garbage bags." (*Id.* at 6.) Plaintiff and his uncle got into an altercation about who owned the house. (*Id.* at 8.) The uncle claimed the house was now his and asked Plaintiff to leave; Plaintiff refused. (*Id.*) The uncle allegedly raised a walking stick "in a threatening way" against Plaintiff, at which point Plaintiff called the police. (*Id.*)

Defendants Leuze and Sose arrived at the scene. (*Id.* at 9.) Plaintiff presented his New York State driver's license, which listed 392 Adelphi St. as his address. (*Id.* at 8.) Plaintiff also allegedly offered to search the house for mail that would corroborate his residency, but the officers declined his request. (*Id.* at 8-9.) Plaintiff claims that his uncle placed the officers on the phone with Plaintiff's half-cousin, Tarik Sheppard, who is also a police officer. (*Id.*) Following the conversation with

3

Tarik Sheppard, Leuze told Plaintiff to leave the property.  (*Id.* at 9.)  Plaintiff complied.  (*Id.*)

Later that day, Plaintiff examined the deed to 392 Adelphi St. and discovered that it was owned by 392 ADL LLC.  (*Id.* at 10.)  Plaintiff believed that the deed proved that his uncle did not own the property, and called the police.  (*Id.*)  Officers "Carlisle" and Duran arrived at the scene.  (*Id.*)  Plaintiff claims that "Carlisle" and Duran entered 392 Adelphi St. without him and had a phone conversation with his half-cousin, Tarik Sheppard.  (*Id.*)  Following the conversation with Mr. Sheppard, the officers told Plaintiff to leave the premises and threatened to take Plaintiff to a hospital if he refused.  (*Id.*)

Plaintiff initiated an illegal lockout proceeding with the Housing Part of the Civil Court of the City of New York.  (*Id.* at 21-23.)  *See* N.Y. Real Prop. Law § 713(10).  The Housing Court found that title to 392 Adelphi Street passed from Plaintiff's grandmother to his uncle, and then to 392 ADL LLC.  (Compl. at 22.)  As such, the Housing Court concluded that even if Plaintiff was unlawfully ousted, he was not entitled to be restored to possession because he would not be able to prevail in a subsequent eviction proceeding.  (*Id.* at 23.)

## II.  Procedural History

Plaintiff commenced this action on March 26, 2021 in the United States District Court for the Southern District of New York,

4

which subsequently transferred the case to this court.  (ECF No. 4.)  Plaintiff brings claims pursuant to 42 U.S.C. §§ 1981 and 1983, asserting that his Fourth and Fourteenth Amendment rights were violated.  (Compl. at 2.)

On April 23, 2021, Magistrate Judge Reyes granted Plaintiff's application to proceed *in forma pauperis* and directed the U.S. Marshals Service to serve the summons and complaint on Defendants without prepayment of fees.  (ECF No. 7.)  The Marshals Service subsequently served Defendants Leuze, Sose, and Duran. (ECF Nos. 10-11, 13.)  The Marshals were unable to serve Defendant "Carlisle" because there was no one by that name at the 88th Precinct.  (ECF Nos. 12, 14.)

At a July 20, 2021 status conference before Magistrate Judge Merkl, defense counsel indicated that Plaintiff intended to sue Officer Carlin, rather than Officer "Carlisle."  (ECF No. 17 at 17.)  Magistrate Judge Merkl directed Plaintiff to consult with defense counsel regarding the identity of the officer and specifically advised him that "if you can't figure out who that other officer is or how to serve that person, the [M]arshals aren't going to be able to give the person the complaint." (*Id.* at 19.) Plaintiff stated that he understood.  (*Id.*)  To date, Officer Carlin has not been served.

On August 6, 2021, Defendants requested a pre-motion conference for a motion to dismiss the complaint for failure to

state a claim.   (ECF No. 18.)   At the August 21, 2021 pre-motion conference, the court granted Plaintiff leave to amend his complaint and directed the parties to submit a briefing schedule if Defendants intended to move to dismiss the amended complaint. (8/18/2021 Minute Entry.)   Subsequently, however, Plaintiff informed Defendants that "he would not be amending his complaint." (ECF No. 24 at 1.)   Accordingly, the parties proceeded to brief Defendants' motion to dismiss based on the original complaint, which is now ripe for decision.

## Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, "[a] pleading that offers labels or conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations and citation omitted).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held

to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted).   The court accordingly construes Plaintiff's submissions to "raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

## Discussion

### I.   Section 1983

To state a claim under Section 1983, "a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015) (quotations and citation omitted).   Here, Plaintiff's Section 1983 claims are based on alleged violations of the Fourth and Fourteenth Amendments by police officers.   (Compl. at 2.)

### A. Fourth Amendment

Plaintiff claims that he was unreasonably seized when Defendants directed him to leave the premises on April 19, 2020. (Compl. at 9.)   In support of this claim, Plaintiff provides his driver's license listing his address as 392 Adelphi Street and alleges that he lived in the apartment at 392 Adelphi Street with his father for two years prior to entering a treatment facility in March 2020; that he had a key to the apartment, received mail, and

stored his belongings there; that he had been welcome at 392 Adelphi Street for his entire life; and that, along with several other family members, he lived at 392 Adelphi Street on numerous occasions since 1992. (*Id.* at 5-6; Pl.'s Opp'n at 6, 9, 20.) Under these circumstances, the court finds that Plaintiff has stated a plausible Fourth Amendment seizure claim based on the officers' directive to leave the premises.

A person is seized when an officer uses "physical force or [a] show of authority" to "restrain[] the liberty of a citizen." *Salmon v. Blesser*, 802 F.3d 249, 252 (2d Cir. 2015) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). "To explain when a sufficient 'show of authority' effects restraint, the Supreme Court has relied on a totality-of-the-circumstances test, asking whether a reasonable person would believe that he was 'not free to leave.'" *Id.* (quoting *INS v. Delgado*, 466 U.S. 210, 215 (1984)). As both the Supreme Court and the Second Circuit have recognized, however, "the 'free to leave' test may not be the best measure of a seizure where," as here, "a person has no desire to leave the location of a challenged police encounter." *Id.* at 253 (citing *Florida v. Bostick*, 501 U.S. 429, 434-36 (1991)). In those circumstances, the appropriate inquiry is "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Id.* (quoting *Bostick*, 501 U.S. at 436).

Applying these principles, the Second Circuit concluded in *Salmon* that "an order to depart a *public place* that allows a person to go anywhere else he wishes does not, without more, effect a Fourth Amendment seizure." *Id.* at 257 (emphasis added) (citing *Sheppard v. Beerman*, 18 F.3d 147, 153 (2d Cir. 1994)). "[T]he question of whether a seizure has occurred when police officers merely instruct an individual to leave their *home*," however, "remains unresolved." *Grafton v. Fobelk*, 2019 WL 6716611, at *2 (N.D. Ill. Dec. 10, 2019) (emphasis added; citation omitted); *see also, e.g.*, *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 523 (6th Cir. 2019) (adopting the Second Circuit's decision in *Salmon* "at least in circumstances where the person being asked to leave is not privileged to remain in the space").

"When it comes to the Fourth Amendment, the home is first among equals." *Lange v. California*, 141 S. Ct. 2011, 2018 (2021) (citation omitted). Given that "the right of a man to retreat into his own home" lies at the "very core" of the Fourth Amendment, *id.* (citation omitted), the court concludes that – unlike a public place – a plaintiff can plead a Fourth Amendment seizure when he reasonably submits to an order to leave his home, even when the officers do not use "physical force intentionally to restrain plaintiff and control his movements." *Salmon*, 802 F.3d at 257; *see also, e.g.*, *Grafton*, 2019 WL 6716611, at *2 (noting that "it may be a seizure to be asked to leave one's current residence").

9

Having unsuccessfully attempted to prove to the officers that 392 Adelphi Street was his residence, Plaintiff has adequately pleaded that a reasonable person in his position would not have felt "free to decline the officers' requests" to leave his home "or otherwise terminate the encounter." *Salmon*, 802 F.3d at 253 (quoting *Bostick*, 501 U.S. at 436).

Defendants dispute that the apartment was Plaintiff's "home" for purposes of the Fourth Amendment and argue that Plaintiff lacked any expectation of privacy in the apartment. (ECF No. 30 ("Defs.' Mem.") at 15-17.)   At this preliminary stage of the litigation, and assuming the truth of Plaintiff's allegations, the court cannot agree.   It is true that the state court found – and the deed attached to the complaint reflects – that title to 392 Adelphi Street passed from Plaintiff's grandmother, to Plaintiff's uncle Barry Shepard, to an entity called 392 ADL LLC. (Compl. at 20, 22.)   Similarly, Plaintiff acknowledges that he himself never had a lease or otherwise paid rent to live at 392 Adelphi Street.   (*Id.* at 22; Pl.'s Opp'n at 9.)   Nevertheless, there are numerous other bases on which Plaintiff's expectation of privacy may be grounded.

For example, under New York law, it is generally unlawful to evict anyone without a court order "who has lawfully occupied [a] dwelling unit for thirty consecutive days or longer."   N.Y. Admin. Code § 26-521(a).   In addition, even if Plaintiff did not

10

enjoy an expectation of privacy in his own right, "it has long been recognized that a person may claim a legitimate expectation of privacy in a dwelling other than his own." *Figueroa v. Mazza*, 825 F.3d 89, 108 (2d Cir. 2016). In *Minnesota v. Olson*, for example, the Supreme Court held that an "overnight guest" can enjoy a legitimate expectation of privacy in his host's home. 495 U.S. 91, 98 (1990). And in *Figueroa*, the Second Circuit concluded that the plaintiff – regardless of whether he was an "overnight" guest – enjoyed a legitimate expectation of privacy in his mother's home, and thus his claim for unlawful entry under Section 1983 could survive summary judgment. 825 F.3d at 110-11.

As the Second Circuit explained, the "ultimate inquiry" is "whether the host has so liberally shared his own privacy interest with his guest that it shelters the guest against unreasonable government intrusion." *Id.* at 109. The Second Circuit identified several factors relevant to this inquiry that are present in this case, including the substantial time that Plaintiff spent on the premises; the presence of a familial connection between Plaintiff, his father, his uncle, and other family members who allegedly resided at 392 Adelphi Street; and Plaintiff's possession of a key to and storage of possessions on the premises. *See id.* Thus, regardless of whether Plaintiff's "host" is considered to be his father or 392 ADL LLC, the court concludes that Plaintiff has pleaded sufficient facts to establish

a reasonable expectation of privacy. *See, e.g.*, *Santagata v. Diaz*, 2020 WL 1536347, at *8-9 (E.D.N.Y. Mar. 30, 2020) (concluding, on summary judgment, that the plaintiff had a reasonable expectation of privacy in his grandmother's home based on the presence of several *Figueroa* factors).

Ultimately, Defendants' bid for dismissal suffers from a fatal flaw: the absence of any information regarding 392 Adelphi Street's current owner, 392 ADL LLC.  Discovery may well reveal that, at the time he was ordered to leave the premises, Plaintiff was a "mere trespasser" with "no Fourth Amendment protection in premises he occupie[d] wrongfully." *United States v. Sanchez*, 635 F.2d 47, 64 (2d Cir. 1980).  For example, it is possible that Plaintiff's uncle, Barry Shephard, stands behind 392 ADL LLC and had the authority to revoke any consent for Plaintiff to remain in the apartment.  (*See* Defs.' Mem. at 1 (stating that 392 Adelphi Street was Plaintiff's "uncle's home").)  The only information now before the court, however, is that the deed for 392 Adelphi Street lists the same address for both Barry Shephard and 392 ADL LLC.  (Compl. at 20.)  Without additional facts regarding 392 ADL LLC and the legal status of the residence, the court cannot conclude that Plaintiff was a mere "squatter" with no right to occupy the premises at the time of his interactions with the police.  *See, e.g.*, *Gill v. Dawkins*, 2020 WL 7042647, at *3-4 (E.D.N.Y. Nov. 30, 2020) (concluding, on summary judgment, that the plaintiff lacked

any reasonable expectation of privacy and thus could not succeed on an unlawful entry claim under Section 1983); *Wilson v. Sessoms-Newton*, 2017 WL 3575240, at *5-6 (E.D.N.Y. Aug. 17, 2017) (same).

Finally, the court notes that many cases involving an order to leave a home "are decided on qualified immunity grounds." *Grafton*, 2019 WL 6716611, at *2; *see, e.g.*, *Wilson*, 2017 WL 3575240, at *9-10. It appears exceedingly likely that Defendants would be able to prevail on a qualified immunity defense in this case. *See, e.g.*, *White v. City of Markham*, 310 F.3d 989, 996-97 (7th Cir. 2002). Defendants do not raise qualified immunity at this stage, however, and the court will not raise such a defense for them. *See also, e.g.*, *Barnett v. Mt. Vernon Police Dep't*, 523 F. App'x 811, 813 (2d Cir. 2013) (explaining that a defendant "faces a formidable hurdle" in raising qualified immunity at the motion to dismiss stage because entitlement to immunity must be established based only on "facts appearing on the face of the complaint" (citations omitted)). In their motion, Defendants argue only that Plaintiff lacked a reasonable expectation of privacy and was not "seized" within the meaning of the Fourth Amendment. (Defs.' Mem. at 15-19.) Having rejected those arguments, the court denies Defendant's motion to dismiss the Fourth Amendment claims.

B. Fourteenth Amendment

Plaintiff also claims that Defendants violated his Fourteenth Amendment right to equal protection. (Compl. at 2, 9.) "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). A plaintiff must show "both that he was treated differently than other persons who were similarly situated and that such differential treatment was either without rational basis (a 'class of one' claim) or was motivated by an intent to discriminate on an impermissible basis (a selective enforcement claim)." *Casciani v. Nesbitt*, 392 F. App'x 887, 888 (2d Cir. 2010). "A plaintiff asserting a selective enforcement or class-of-one claim must present evidence of similarly situated comparators." *Gambino v. Village of Freeport*, 2022 WL 138065, at *11 (E.D.N.Y. Jan. 14, 2022) (collecting cases).

Plaintiff has failed to plead an equal protection claim under either theory. For example, Plaintiff claims that his equal protection rights were violated because the officers believed the representations made by Plaintiff's uncles and ordered Plaintiff to leave the house. (Compl. at 9.) Plaintiff also claims that one of the officers violated his equal protection rights by "disregarding" his New York driver's license, which lists an address of 392 Adelphi Street, and by refusing to allow him to show that he received mail at 392 Adelphi Street. (*Id.*) These

14

allegations do not give rise to a plausible equal protection claim because "Plaintiff makes no effort under either theory to identify sufficiently similar comparators who were treated more favorably." *Lewis v. City of Newburgh*, 2021 WL 6052135, at *5 (S.D.N.Y. Dec. 20, 2021).  Similarly, Plaintiff "does not include any factual allegations suggesting that his [allegedly] differential treatment by Defendants was the result of 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure.'" *Poole v. Hawkins*, 2021 WL 695119, at *9 (E.D.N.Y. Feb. 23, 2021) (quoting *Bush v. City of Utica*, 558 F. App'x 131, 134 (2d Cir. 2014)).  Accordingly, Plaintiff's equal protection claims are dismissed.  The court declines to grant leave to amend, both because doing so would be futile in light of the absence of any indication that similarly situated persons were treated more favorably than Plaintiff or that Plaintiff's treatment was based on impermissible considerations, and because Plaintiff refused a previous opportunity to amend his complaint. *See, e.g.*, *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (explaining that although district courts "should frequently provide leave to amend before dismissing a *pro se* complaint," leave to amend "is not necessary when it would be futile"); *Rosner v. Star Gas Partners, L.P.*, 344 F. App'x 642, 645 (2d Cir. 2009)

(affirming denial of leave to amend where the plaintiff declined an opportunity to amend at the pre-motion conference).

**II.  Section 1981**

To state a claim under Section 1981, the complaint must allege that (1) Plaintiff is a member of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) Defendants' discrimination concerned one of the statute's enumerated activities. *Bibliotechnical Athenaeum v. Am. Univ. of Beirut*, 2022 WL 710896, at *3 (2d Cir. Mar. 10, 2022) (citing *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000)).  The court agrees with Defendants that the complaint fails to state a claim under Section 1981.

As a threshold matter, Section 1981 "does not provide a separate private right of action against state actors." *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018).  Because the police officers that Plaintiff sues are all state actors, the complaint does not state a viable claim under Section 1981.  *See, e.g.*, *Rodriguez v. City of New York*, 2022 WL 768159, at *19 (E.D.N.Y. Mar. 14, 2022).  Even if the complaint did not suffer from this fundamental defect, however, Plaintiff has failed to adequately plead the elements of a Section 1981 claim.

First, the complaint fails to allege that Plaintiff is a member of a racial minority, as required to state a Section 1981 claim.  *See, e.g.*, *Gaddy v. Ports Am.*, 2015 WL 3929693, at *6

16

(S.D.N.Y. June 15, 2015).  Second, a plaintiff alleging racial discrimination "must do more than recite conclusory assertions." *Henry v. County of Nassau*, 6 F.4th 324, 335 (2d Cir. 2021) (citation omitted).  Here, the complaint offers nothing more than a conclusory assertion that Defendants' actions were motivated by "racial and at the very least class bias."  (Compl. at 10.)  For example, Plaintiff alleges that an Asian-American police officer stated, "If my father has an apartment on 5th Ave. and he dies, do you think I can just show up[?]"  (*Id.*)  This statement does not give rise to a plausible claim that Plaintiff was "subjected to intentional discrimination solely because of [his] ancestry or ethnic characteristics." *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987).  In short, Plaintiff's "'naked allegation' of racial discrimination on the part of [Defendants] is too conclusory to survive a motion to dismiss." *Andrews v. Fremantlemedia, N.A., Inc.*, 613 F. App'x 67, 69 (2d Cir. 2015) (quoting *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988)).

Finally, the complaint fails to allege discrimination concerning one of Section 1981's enumerated activities.  Plaintiff claims that Defendants interfered with his right to "give evidence" under Section 1981 because they allegedly refused his request to provide additional evidence of his residence at 392 Adelphi Street. (Pl.'s Opp'n at 5.)  The right to "give evidence," however, "is concerned with citizens' ability to participate in legal

17

proceedings." *Frierson-Harris v. Hough*, 2006 WL 298658, at *7 (S.D.N.Y. Feb. 7, 2006). Accordingly, because Plaintiff sues state actors and has failed to adequately plead any of the three elements of a Section 1981 claim, dismissal is warranted. As with the equal protection claim, the court declines to grant leave to amend because doing so would be futile in light of Section 1981's lack of applicability to state actors and because Plaintiff declined a previous opportunity to amend. *See, e.g.*, *Reed*, 541 F. App'x at 41; *Rosner*, 344 F. App'x at 645.

## III. Failure to Serve Defendant Carlin

As a last resort, Defendant Carlin – named in the complaint as Defendant "Carlisle" – argues that he should be dismissed because he has not been properly served. (Defs.' Mem. at 20-21.) "If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Where "the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* In addition, "district courts have discretion to grant extensions even in the absence of good cause." *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007).

As discussed above, Defendants informed Plaintiff of their belief during a July 20, 2021 status conference that

18

Plaintiff intended to serve Officer Carlin rather than Officer "Carlisle." (ECF No. 17 at 17.) Plaintiff was not prepared to accept Defendants' explanation during the status conference because he was "pretty confident that [he] spelled [the] name correctly" and because the Marshals Service's explanation – that there was no Officer Carlisle at the 88th Precinct – "didn't say that . . . no Officer Carlisle existed." (*Id.* at 18-19.)

Despite Magistrate Judge Merkl's directive to confer with Defendants, and despite her warning that the Marshals would be unable to effectuate service "if you can't figure out who the other officer is or how to serve that person" (*id.* at 19), Plaintiff's opposition continues to argue that the explanation on the affidavit of service "was rather vague." (Pl.'s Opp'n at 8.) Nevertheless, in light of his *pro se* status, the court will afford Plaintiff "one last chance to comply with Federal Rule of Civil Procedure 4." *Jackman v. Davidovits*, 2021 WL 5628683, at *1 (E.D.N.Y. June 30, 2021); *see also, e.g.*, *Griggs v. Schmauss*, 2020 WL 8988678, at *1 (W.D.N.Y. May 26, 2020) (extending deadline for service "[i]n light of Plaintiff's *pro se* status and the apparent difficulty the USMS has had in serving Defendant").

By July 6, 2022, Defendants shall service Plaintiff and file on the docket the full name and service address of the Officer Carlin identified during the July 20, 2021 status conference. Defendants shall also explain in their submission to Plaintiff and

the court their basis for believing that Officer Carlin is the defendant that Plaintiff intended to name in the complaint.  By July 20, 2022, Plaintiff shall file a letter with the court stating whether he agrees with Defendants that Officer Carlin is the proper defendant, rather than Officer "Carlisle."  If Plaintiff agrees in his letter that Officer Carlin is the proper defendant, the court will direct the Marshals to serve Officer Carlin with the summons and complaint and will deem the complaint amended to substitute the name Officer Carlin for the name Officer "Carlisle."  If Plaintiff does not agree that Officer Carlin is the proper defendant, and otherwise fails to identify the proper defendant in his letter, Officer "Carlisle" will be dismissed under Rule 4(m).

## Conclusion

For the reasons set forth above, Defendants' motion to dismiss is DENIED as to the Fourth Amendment claims and GRANTED as to the Fourteenth Amendment and Section 1981 claims.  By **July 6, 2022,** Defendants shall serve Plaintiff and file on the docket the full name and service address of the Officer Carlin identified during the July 21, 2021 status conference, and shall explain their basis for believing that Officer Carlin is the defendant that Plaintiff intended to name in the complaint.  By **July 22, 2022,** Plaintiff shall file a letter with the court stating whether he agrees with Defendants that Officer Carlin is the proper defendant, as opposed to Officer "Carlisle."  If Plaintiff does not agree

that Officer Carlin is the proper defendant, and fails to otherwise identify the proper defendant, Officer "Carlisle" will be dismissed under Rule 4(m).

Defendants are directed to serve a copy of this Memorandum and Order on Plaintiff and note service on the docket.

SO ORDERED.

/s/ Kiyo A. Matsumoto
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

Dated:    Brooklyn, New York
          June 27, 2022